Please note the only only the clerk of the court is permitted to record these proceedings today. Counsel for the appellant, you may proceed. Thank you, Your Honor. May it please the court? Counsel, my name is Nathan Swanson. I am here on behalf of Appellant Robbie Hayes. Appellant was convicted after a jury trial of one count of armed violence and one count of 10 years in the Department of Corrections to run concurrently. Six points on appeal. I'll try to deal with some of them in a very prompt manner. His first point alleged that the trial court plainly erred by allowing the admission of the state or people's Exhibit 8, which was a picture of a utility knife that was located when he was arrested in a pair of pants. I don't believe that he was wearing them, but pursuant to the record. The case law is clear that unrelated weapons are not to be admitted because they carry such a potential for prejudice in the defendant, making the jury believe that defendant is the type of person to carry a weapon if there's not evidence that either the weapon was found was linked to the crime or that it was a type of weapon that is acceptable for use in the crime. In this case, there was no evidence that the weapon was used to the crime. The only person, the only individual who testified that Mr. Hayes was carrying a knife at the time of the crime was Mr. Price. Mr. Price was admittedly by his own statements rather intoxicated. He did not describe the knife that he allegedly saw at all. Are you suggesting that the other male witness who saw something gleam or glint in the defendant's hand at the time of the incident, he didn't specifically name it as a knife, but he saw something that was glinted in the sunlight or off the lights. Is that correct? That's correct. There was one witness who testified that he saw, he believed he saw something in Mr. Hayes' hand. Okay. You're just making the distinction that there was no indication by that witness that it was a knife. Correct, Your Honor. Okay. Yes. There was no indication by that witness that it was a knife. And there was another witness who, both by his testimony and pursuant to the video evidence that was admitted, he immediately intercepts Mr. Hayes after Mr. Hayes struck Mr. Price. And his testimony was that he did not see a knife or anything in Mr. Hayes' hand at that point. So in addition, the doctor who any kind of, you know, sharp object could have caused this weapon. He never was shown a picture of people. It was never shown people's exhibit eight or the knife depicted therein. So there was never any testimony from any kind of expert that that knife was suitable for this kind of wound. And I think in this case, the case law specifically, People v. Jackson is instructive on this point. In People v. Jackson, which was a case out of this district, the defendant was charged with a shooting. When he was arrested, much like Mr. Hayes, a firearm was located in his house. There was evidence that his fingerprints were on the firearm. In that case, and now clearly the category of weapon there, he was charged with shooting the victim. There was a gun found in his home, but there was never any testimony about the caliber of the gun, the caliber of the bullet that was located, if that matched with the firearm, if there's no testimony from the eyewitness to the shooting that the firearm was a handgun rather than a rifle or something else. And this court found that the evidence of the unrelated firearm was plain error, admitting that was plain error. And I would argue that that is generally parallel to this case. Yes, there was evidence that Mr. Price sustained a cut to his neck. He testified that he saw a knife, but there was no testimony about the color of the knife, the size of the knife, the shape of the blade. The knife exhibited in People's Exhibit 8 is a very distinctive knife. It has a red handle, a curved and serrated blade, but nobody testifies that it was suitable or that it was similar or that it was on the scene or anything like that. It was a completely unrelated knife and it shouldn't have been admitted. Let me ask you this. The expert, the doctor, suggested that it would have been a straight, clean cut. And I believe in your brief, you point out that the blade on that carpet knife was serrated and curved. And is that to suggest that that type of a knife could not have caused the type of cut that was on the victim's neck? Now, as a personal matter, I would certainly believe that. But to the extent that we're talking about inferences here and what conclusions can be drawn, it is a very distinctive knife with a very distinctive blade. To suggest that it was a clean cut and then show a picture of a knife that seems, at least in first impression, to be incapable of making such a cut without any kind of testimony that it could have happened that way, I think that increases the problem. Counsel, are you suggesting that a serrated knife doesn't make a clean cut? No, sir. I'm not suggesting that. I'm suggesting that when you have something with a sawtooth blade like that and testimony that it was a clean cut, in fact, I believe his testimony was that it would be difficult for it to have been something like a broken key or something like that because the cut was so clean, that increases the possibility of an unrelated weapon being brought in and prejudice accruing from the remission of that unrelated weapon. I think in that case where there's such a distinction, where it's such a unique looking knife, that you need more than just, well, somebody saw a knife, therefore all knives become admissible, including one that just looks and is to the common sense, seems very distinct. With regards to appellants points two and three, those have to do with the potential for a conflict of interest on the part of attorney rich. Appellants point two argued that there was a per se conflict. Appellants point three, that there was a actual conflict. As to those appellants would stand on the brief unless there are any questions about it. Points four, five, and six have to do with sentencing error. I believe the easiest one about those would be the argument that the amendment to section 5-45-95B, that was the amendment that occurred during the pendency of appellant's motion for a new trial, should have been applied. I'm sorry, not motion for trial. During the pendency of his motion to reconsider a sentence, he should have gotten the benefit of that amendment. In appellant's reply brief, he conceded this court's ruling in People v. Hilson would seem to resolve that issue. However, People v. Brown, on which this court relied in Hilson, the Supreme Court has granted leave to appeal on that is currently pending. I checked earlier this morning. To the extent that this court is not inclined to grant relief on this, appellant would ask that you wait for the resolution in Brown because that would make it clear which way that amendment applies. Does it apply to a pending motion to reconsider a sentence or not? As to two other points, the trial court explicitly stated, both at the sentencing and at the motion to reconsider sentencing hearing, that he believed there was evidence of, I'm blanking on the word now, but evidence that tended to excuse or explain the crime or evidence that tended to show why Mr. Hayes acted in those. Now, the case law doesn't specify what strong provocation or evidence it tended to excuse is, nor does the statute, but it does say that strong provocation especially is broader than serious provocation. Again, the trial court explicitly said it believed that there was some evidence of it, but that evidence was not sufficient to trigger consideration and mitigation. Appellant would argue that's error. Some weight. Now, it's up to the trial court to determine which weight, but to say that there's evidence that tends to arrive at those points of mitigation, but then say that's not enough, I'm not going to consider it in mitigation, that would be error, and so remand for resentencing should apply. The final point that appellant raised has to do with count two. Count two was the felony possession of a weapon count. The state used Mr. Hayes' Wayne County prior convictions to establish him as a felony. That was what they based that charge on. To qualify for class X offender status, the oral statements made both at sentencing was that the class, the Wayne County convictions are what were used as the basis to enhance count two to class X felony. That's impermissible double counting. The case law is clear that if you use the same factor as an element and as a point in aggravation, impermissible double counting, the sentence should be vacated and the matter remanded. Now, unless there are other questions on those points, concede the last 25 seconds. Justice Bowie? No questions, thank you. Justice Barberis? None at this time, thanks. Council for the state? You're on mute. May I please report? Council, Laura Bailon on behalf of the people. The people would address issue six first, as there is an argument in the reply brief that was raised for first time in the reply brief. Concerning issue six, no double enhancement occurred in this case. Defendant could be sentenced as a class X offender if he had two or more prior qualifying class two or greater felonies. Defendant's opening brief argued only that the 2015 Wayne County conviction could not qualify because it was an element of the offense, but the reply brief mentions a 2001 conviction as well. Under Illinois Supreme Court Rule 341 H7, the argument concerning the 2001 conviction was forfeited because it was not raised in the opening brief. And in any event, this 2001 conviction was also not raised as an issue at the sentencing hearing. At the sentencing hearing, defendant agreed that class X sentencing applied. Defendant agreed that the pre-sentence report and prior convictions could be considered. And on appeal at page 36 of defendant's brief, defendant's even still relying on the pre-sentence report to determine what the convictions were that qualified for class X sentencing. On the merits of the issue as raised in the brief, defendant was eligible for the class X sentencing because excluding the class two felony from 2015, defendant still had two qualifying felonies. They're listed in the pre-sentence report as a felony from a 2000 case and a class X felony from a 2001 case. And defense counsel at the sentencing hearing recognized that those were prior qualifying convictions on page 765 of the record stating that defendant was class X eligible because of prior cases expungement order had been vacated. Here, the trial judge could rely on the unobjected to pre-sentencing report and find that defendant qualified as a class X offender based on the two convictions, which were not elements of the offense. And on the motion to reconsider at C-317, the court found that the defendant had not objected to the PSI so that the convictions therein could be considered as a basis to support the class X sentencing. Circling back to the first issue, no error or admission of People's Exhibit 8, defendant has relied on the Jackson case, but that case is distinguishable. In the Jackson case, an actual pistol was introduced apparently in the state's case in chief. Here, defendant testified on his own behalf. He testified he did not own any knives and then a picture of a knife was introduced to impeach that testimony. Jackson also had an eyewitness in this case, instead defendants on video attacking the victim. Further in Jackson, the victim could not describe the weapon as a pistol and there was no evidence that a pistol could have caused the victim's wound. Here, the victim did describe the weapon as a knife and there was evidence from the trauma surgeon that the injury was caused by a sharp instrument, a cutting instrument such as a knife, a piece of glass, a scissors, or something to that effect. If a scissors is something that could have caused this injury, according to our expert witness trauma surgeon, then surely a knife with a serrated blade would be as sharp, like sharp enough to also cause that injury. Additionally, the evidence was not closely balanced and it recognizes as a plain error analysis and does not argue the second prong, but does argue the closely balanced prong. As the trial judge stated in this case, the evidence was not closely balanced. The trial judge stated that Clarence Darrow himself could have done little to effectively counter the state's case. Defendants claim that he only punched Brian in the chin was just not a plausible version of events, where defendant is clearly the person who injured the victim as he's on video making contact with him and the injury was clearly inflicted by a knife. The victim saw the defendant holding a knife and that is why he stopped moving towards defendant and started moving backwards. He was heading backwards at the time of the attack. Immediately after the attack, he has a large slash in his neck that is just gushing blood. One witness testified he was sure that defendant was holding something in his hand and it glinted off of the lights and he saw neck gushing blood. Defendant's own witness, Mary Sandy, testified that she saw that victim had been cut, testified that she didn't see it happen, but she did testify that the victim had been cut. Another witness saw the victim in the bar holding a bloody towel to his neck and the victim who claimed there was nothing in defendant's hands said he was a buddy of defendant and he also claimed that he was distracted at the time of the actual incident and didn't see the punch. Additionally, the trauma surgeon testified to his expert opinion that this was caused by a sharp cutting instrument such as the large slash wound bleeding uncontrollably. There's a picture of the wound about a week after the event in Exhibit 5B. It shows a wound that is not a punch to the chin, it's clearly a slash to the neck. So here where there's not two possibly credible versions of events, the evidence was not closely balanced and defendant has not shown error. The people would rely on their brief for the conflict of interest issues as well as defendant has. And turning to the sentencing issues, Issue 4, the trial judge properly considered the evidence in mitigation. Defendant argues that the trial judge refused to consider statutory factors 3 and 4, but the record shows that the judge did consider those factors, he just said the evidence didn't meet those factors. The judge wasn't required to find that factors 3 and 4 were met where the bar after calling Tracy Price a nasty tattooed dope whore saying, God forgive me, I'm about to sit on these stupid dope heads out in Bluford. Once he was outside, he went to his truck. Brian Price testified that he saw defendant heading towards him and that's why Brian started heading across the parking lot. But at the time of the actual attack, Brian said he saw the knife, he was heading backwards. The tape shows that he's heading backwards as he said. And Anthony Cates is standing in between. At the moment of the attack, defendant marches forward 10 feet, goes around Cates, slashes Brian's neck, missing major veins by three millimeters, inflicting this wound that's gushing blood uncontrollably, can't be treated at a local hospital, it's so severe and requires emergency surgery. So while the judge found there was some provocation and some justification, there just wasn't strong provocation or substantial provocation. And the trial judge's weighing of the evidence that finding it didn't meet those factors was not in the use of his discretion. How was there not a conflict of interest about the sexual relationship with the defendant, Ms. Rich? Sure. The conflict of interest issues, defendant in this case had two attorneys, lead counsel Randy Kelly and closer to trial, Megan Rich entered an appearance. Ms. Rich was dating defendant before and throughout the trial. And that dating relationship is what defendant argues was a conflict of interest. Illinois law recognizes two types of conflict of interest, per se and actual. And defendant argues both but has shown neither. There's no per se conflict of interest because the defendant needs to identify a person or entity that would benefit from a verdict unfavorable to defendant. And how would Ms. Rich benefit from a verdict unfavorable to defendant? There's just no conflict. She wants a future with him and there's no future without an acquittal. Illinois Supreme Court case law in Yoast recognizes only three categories of per se conflict and another Illinois Supreme Court case says that is a closed set and it's uncontested that Ms. Rich didn't fit into any of those three categories, that this type of relationship doesn't fit into those categories. So under Yoast, there's no per se conflict and instead the appropriate analysis would be an actual conflict. Here there's a manifest. What about the fact that he testified at her behest when co-counsel was not going to allow him to testify? Well the record actually shows Mr. Kelly co-counsel testified that at the point in the trial which he did testify, Mr. Kelly did believe that defendant needed to testify to show his side of the story. Well he had hoped that such testimony wouldn't be necessary. He views everything on a case by case basis and he specifically testified that he too agreed that defendant needed to testify. It was also admonished by the trial judge that it was his decision and his decision alone and he made the decision to testify there. So if there's a theory that Ms. Rich told defendant not to listen to Kelly, Mr. Kelly told defendant he did need to testify and that argument is just based on speculation as opposed to identifying a specific deficiency attributable to an actual conflict. I see I'm out of time so the people would ask that this court affirm defendant's conviction and sentence. Any other questions? Justice Bowie? Not at this time, thank you. Justice Barbera? No. Rebo? Thank you, Your Honor. With regards to People's Exhibit 8, the state is attempting to distinguish Jackson from this case by saying that they mentioned that it was an actual pistol versus a picture of a knife. I'm not aware of any case law that suggests there's a distinction between the two. The issue is whether or not there was evidence of unrelated weapons and the case law cited in the brief would suggest that that principle extends to other evidence besides the actual weapon itself. So I don't think that distinction is of any moment. The state mentioned that there was no evidence that a pistol could have caused the wound in Jackson. That is a somewhat misleading frame of it. The ruling in Jackson was that not that there was no evidence in the sense of that evidence didn't exist, it's that they didn't present any evidence that the evidence wasn't presented by the state and that's the state's obligation. It's the same here. The state did not present evidence that the knife featured in People's Exhibit 8 could have caused the injury. Maybe it could have, maybe it couldn't have. As I said in the initial part of my oral argument that I think there's some question, especially given the serrated nature of that blade, but that's the state's obligation. They didn't do it. I don't think the distinctions they've raised between this case and Jackson are of any moment. With regards to the sentencing arguments, the state's statements to the trial court was the Wayne County convictions underlie the enhancement, the class X enhancement. That's what the trial court said. When appellant attempted to raise an issue about the 2001 conviction in his motion to reconsider sentence, the state then filed a motion asking that to be struck on the grounds that it wasn't proper to raise that. Now they're saying, no, that count, that prior, that prior, that's what gets us class X sentencing here. That's completely inconsistent and they shouldn't be permitted that avenue. State said it's the, it's the Wayne County convictions. That's why we have class X sentencing. They have to rely on that. And if that's the case, then count two was, count two impermissibly double counted one of the Wayne County convictions, because that was the basis for the Wayne, for the felon in possession charge. Finally, with regards to the mitigation, the state's kind of presenting a roving argument here. The trial court said there was evidence of provocation and evidence that tended to excuse it, but it didn't consider that argument. It didn't consider that evidence. That's what the trial court said. Now the state argues in its brief that, oh, the trial court consider it, it just didn't change the effect. But now the state's saying, well, the state, the judge wasn't obligated to find that those factors were triggered, but that's not the point the state brought in its brief. At the end of the day, the record is clear here. The trial court believed there was evidence of it, but the trial court said, I am not considering that evidence. And that would be improper. The trial court was, would of course be free to give the evidence in mitigation any weight it desired, but the felon would argue that the trial court couldn't just say, nope, there's no evidence of mitigation, even though I see evidence of mitigation. And then, was there any other questions? Justice Bowie? No questions. Justice Barbaros? No, thank you. Anything else, Mr. Swenson? No, Your Honor. Okay, the court will take the matter under advisement to issue its decision in due course. The court will be in a long recess until tomorrow.